# In re Erick MARROQUIN-Garcia, Respondent

File A90 509 015 - Los Angeles

*Decided by Attorney General January 18, 2005*

*Decided by Board February 21, 1997*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The federal definition of "conviction" at section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A) (2000), encompasses convictions, other than those involving first-time simple possession of narcotics, that have been vacated or set aside pursuant to an expungement statute for reasons that do not go to the legal propriety of the original judgment, and that continue to impose some restraints or penalties upon the defendant's liberty.

(2)   An alien whose firearms conviction was expunged pursuant to section 1203.4 of the California Penal Code has been "convicted" for immigration purposes.

FOR APPLICANT: Jay J. Tanenbaum, Esquire, Sherman Oaks, California

FOR DEPARTMENT OF HOMELAND SECURITY:  Joe D. Whitley, General Counsel

## BEFORE THE ATTORNEY GENERAL
(January 18, 2005)

In 1997, the Board of Immigration Appeals requested that its decision in *In re Marroquin*, A90 509 015 (BIA Feb. 21, 1997), be certified for review pursuant to the provision now codified at 8 C.F.R. § 1003.1(h)(1)(ii) (2004). The request for certification is granted and, for the reasons set forth in the accompanying opinion, the decision of the BIA is reversed and remanded for further proceedings.

## OPINION

The Board of Immigration Appeals ("BIA" or "Board") referred its decision in this matter for my review pursuant to 8 C.F.R. § 3.1(h)(1)(ii) (1997).[1]  In its decision, the BIA determined that a new federal definition of "conviction" did not undermine Attorney General precedent that held that a person convicted of a firearms offense under state law is not subject to deportation

---

[1]  Now 8 C.F.R. § 1003.1(h)(1)(ii) (2004).

under section 241(a)(2)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(2)(C) (1994),[2] if that conviction has been subsequently "expunged." Pending my decision, the BIA reversed itself and concluded that the new federal definition of "conviction" means that an alien remains convicted notwithstanding a subsequent state action to expunge the conviction. *See In re Roldan*, 22 I&N Dec. 512, 523 (Mar. 3, 1999) ("*Roldan*"). The Ninth Circuit subsequently reversed the BIA's decision in *Roldan* with respect to aliens convicted of first-time drug possession offenses under state law. *See Lujan-Armendariz v. INS*, 222 F.3d 728, 750 (9th Cir. 2000). The Ninth Circuit's decision does not affect the applicability of *Roldan* to firearms offenses, but, in light of the Ninth Circuit's decision, I find it appropriate to certify the Board's decision and set forth clearly the Executive branch's interpretation of the relevant statute.

For the reasons stated below, I find that the new federal definition of "conviction" means that for a conviction not involving first-time simple possession of narcotics, an alien remains convicted, and thus removable under current section 237 of the INA, notwithstanding a subsequent state action to vacate or set aside the conviction. The BIA's decision is reversed and remanded.

## I.

## A.

Erick Marroquin-Garcia entered the United States without inspection in 1980. He adjusted to the status of lawful permanent resident alien pursuant to section 245A of the INA in December of 1989. *See* 8 U.S.C. § 1255a (1994). He pleaded guilty to unlawful possession of a firearm under California law on October 22, 1990. He was convicted in state court and placed on 5 years' probation. The state court ordered, as conditions of probation, that Marroquin-Garcia spend 365 days in the county jail and pay $100 restitution and the costs of his probation. *See In re Marroquin*, A90 509 015, slip op. at 2 (BIA Feb. 21, 1997) ("*Marroquin*").

The Immigration and Naturalization Service ("INS") instituted deportation proceedings against Marroquin-Garcia on the basis of his state firearms conviction. On September 13, 1994, an Immigration Judge ordered Marroquin-Garcia deportable pursuant to what was then section 241(a)(2)(C) of the INA. *See Marroquin*, at 2. At that time, section 241(a)(2)(C) of the

---

[2] After the initial deportation order was entered in this manner, former section 241 of the Immigration and Nationality Act was redesignated as section 237 by section 305(a)(2) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-598. The redesignated provision has been codified, with modifications that are not relevant here, as section 1227 of title 8, United States Code.

INA stated in pertinent part that "[a]ny alien who at any time after entry is convicted under any law of purchasing . . . possessing, or carrying . . . any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of title 18,) in violation of any law is deportable." 8 U.S.C. § 1251(a)(2)(C) (1994).

During the pendency of his appeal to the BIA, Marroquin-Garcia filed a motion in Superior Court for the County of Los Angeles for relief pursuant to section 1203.4(a) of the California Penal Code. Section 1203.4(a) provides, *inter alia*, that

> [i]n any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty . . . [and] the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code.

*See* Cal. Penal Code § 1203.4(a) (West Supp. 2004). The Superior Court granted Marroquin-Garcia's motion for relief under this expungement statute on December 18, 1994, and ordered Marroquin-Garcia's "felony charge reduced . . . to a misdemeanor," his plea of guilty set aside and vacated, and the complaint against him dismissed. *See Marroquin*, at 2.

Relying on the BIA's decision in *In re Luviano*, 21 I&N Dec. 235 (BIA 1996) ("*Luviano*"), Marroquin-Garcia argued on appeal to the BIA that the expungement of his conviction meant that he had not been "convicted" for purposes of section 241(a)(2)(C) of the INA. As discussed more fully below, the BIA had held in *Luviano* that prior Attorney General opinions compelled the conclusion that an alien whose conviction for a non-narcotics related offense had been expunged pursuant to section 1203.4(a) of the California Penal Code had not been "convicted" for purposes of section 241(a)(2)(C) of the INA. *See Luviano*, 21 I&N Dec. at 237 (citing *In re Ibarra-Obando*, 12 I&N Dec. 576 (BIA 1966; A.G. 1967); *In re G-*, 9 I&N Dec. 159 (BIA 1960; A.G. 1961). At the time the BIA was deciding *Marroquin*, the Board's decision in *Luviano* was pending before the Attorney General. In light of a new federal definition of "conviction," enacted in section 322(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-628, the BIA decided Marroquin-Garcia's appeal rather than wait for the Attorney General's decision in *Luviano*. In *Marroquin*, the BIA concluded that the new federal definition of conviction did not affect the Board's decision in *Luviano* and

therefore that decision was still controlling. Hence, the BIA found, Marroquin-Garcia could not be deported based on the firearms offense. *See Marroquin*, at 6.

Before addressing the merits of the Board's decision, I will first review the relevant history of this issue in greater detail.

## B.

Prior to the enactment of the new federal statutory definition, the INA did not define "conviction." The federal courts, the Attorney General, and the BIA were therefore provided with little legislative guidance as to how to interpret the statutory provisions that subjected to deportation those persons who had been "convicted" of certain types of offenses. Two distinct lines of Attorney General precedent developed that addressed the effect of an expungement on a conviction that would otherwise provide a basis for an order of deportation under the federal immigration laws. Before discussing these lines of precedent, however, I must clarify the term "expungement." Throughout this opinion I will use the term expungement to refer to the process of clearing a defendant's record of a prior conviction. This expungement is achieved generally through two means: either a statute permits a deferred adjudication of a conviction such that a judgment is never entered, or a court vacates or sets aside a judgment of conviction from the books under a rehabilitative statute. As the Ninth Circuit has described the difference,

> [under a] "vacatur" or "set-aside" [statute], a formal judgment of conviction is entered after a finding of guilt, but then is erased after the defendant has served a period of probation or imprisonment and his conviction is ordered dismissed by the judge. . . . [Under a] "deferred adjudication" [statute], no formal judgment of conviction or guilt is ever entered. Instead, after the defendant pleads or is found guilty, entry of conviction is deferred, and then during or after a period of good behavior, the charges are dismissed and the judge orders the defendant discharged.

*Lujan-Armendariz v. INS*, 222 F.3d 728, 735 n.11 (9th Cir. 2000).

Returning to the Attorney General precedents, first, there were decisions that held that aliens who had been convicted of what section 241(a)(4) of the INA termed "crimes of moral turpitude," such as forgery or fraud, were not subject to deportation if their convictions had been expunged. *See In re Ibarra-Obando*, *supra*; *In re G-*, *supra*. Second, there was an Attorney General decision that held that aliens who had been convicted of what section 241(a)(11) termed "narcotics offenses," such as the distribution of marijuana, were subject to deportation even if their conviction had been expunged. *See In re A-F-*, 8 I&N Dec. 429 (BIA, A.G. 1959).[3] In 1970, Congress carved out

---

[3] There, the Attorney General held that Congress's progressive strengthening of the
(continued...)

a narrow exception for simple federal possession offenses when it enacted the Federal First Offender Act ("FFOA"). The FFOA applies only to first-time drug offenders who are guilty only of simple possession. It expunges such convictions (after the successful completion of a probationary period) and was intended to lessen the harsh consequences of certain drug convictions, including their effects on deportation proceedings. Under the FFOA, no legal consequences may be imposed following expungement as a result of the defendant's former conviction. *See* 18 U.S.C. § 3607 (2000). After considering the effect of the FFOA, the BIA announced an exception to the holding of *In re A-F-*, finding that a first-time simple drug possession offender, whose conviction was set aside pursuant to a state statute, would not be deported if he or she would have been eligible for treatment under the FFOA had the charges been filed in federal court. *See In re Manrique*, 21 I&N Dec. 58, 64 ( BIA 1995); *In re Werk*, 16 I&N Dec. 234, 235-36 (BIA 1977).

At the time that the BIA decided *Luviano*, neither of the existing lines of administrative precedent addressed directly the circumstance at issue in *Luviano*, which concerned the effect of an expungement on a person who had been convicted of what the former section 241(a)(2)(C) termed a "firearms" offense. Nevertheless, the BIA concluded in *Luviano* that the prior Attorney General opinions had established a rule that applied to all convictions that were not narcotics-related and that had been expunged. The BIA concluded that this rule precluded such convictions from serving as the basis for an order of deportation.

After the BIA issued its decision in *Luviano*, Congress enacted section 322(a) of IIRIRA, which amended the INA to define the term "conviction" for the first time. The new definition provides:

> [t]he term "conviction" means with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

IIRIRA § 322(a), 110 Stat. at 3009-628; INA § 101(a)(48)(A), 8 U.S.C. § 1101(a)(48)(A) (2000). Because Congress passed the new federal statutory definition during the pendency of respondent's appeal, the new statutory definition of "conviction" applies here. *See* IIRIRA, § 322(c), 110 Stat. at

---

[3] (...continued)
deportation laws with respect to aliens who had committed narcotics offenses that would subject them to deportation under what was then section 241(a)(11) of the INA revealed Congress's intent to subject such aliens to deportation even if their convictions had been technically "expunged" pursuant to section 1203.4(a) of the California Penal Code. *See id.*

3009-629 (explaining that the new statutory definition shall apply "to convictions . . . entered before, on, or after the date of the enactment of [IIRIRA]"). On May 31, 1996, after the enactment of IIRIRA, the Commissioner of the INS referred the Board's decision in *Luviano* to the Attorney General.

The Attorney General's review of the *Luviano* decision was pending at the time Marroquin-Garcia's appeal came to the BIA, but in light of the new federal definition in IIRIRA, the BIA concluded that it should decide the merits of Marroquin-Garcia's appeal, rather than wait for the Attorney General's decision in *Luviano*. In construing this new federal definition, the BIA determined that the statutory text did not make clear whether, or to what extent, Congress intended to treat expunged convictions, of any type, as "convictions" for purposes of the immigration laws. The BIA therefore turned to the legislative history. It relied primarily on a joint explanatory statement in the conference report to the IIRIRA that addressed the new definition. *See Marroquin*, at 4-5. The joint explanatory statement made particular mention of the BIA's pre-*Luviano* decision in *In re Ozkok*, 19 I&N Dec. 546 (BIA 1988), in which the BIA had established rules for determining whether a state court's decision to *withhold* an adjudication of guilt prior to the entry of a formal judgment of conviction—as opposed to vacating or setting aside a conviction already entered—precludes a judge's or jury's finding of guilt, or a defendant's plea of guilty, from being deemed a "conviction" under the INA.[4] *See* Joint Explanatory Statement of the Committee of Conference, H.R. Conf. Rep. No. 104-828 at 199, 223. The BIA noted that, in contrast to the joint explanatory statement's relatively detailed discussion of *Ozkok*, "there was no discussion whatsoever" of the BIA and Attorney General decisions that had established the rules for determining whether formal judgments of conviction that had been entered and subsequently vacated or set aside constituted "convictions" under the INA. *See Marroquin*, at 5.

The BIA concluded from the joint explanatory statement's express reference to *Ozkok*, and its failure to mention the other type of expungement decisions, that Congress did not intend for the INA's new definition of "conviction" to supplant *Luviano's* rule for determining whether a state court conviction that had been formally entered, but subsequently vacated or set aside, constituted a "conviction" under the INA. *See id.* The BIA determined

---

[4] Over the years, the BIA had wrestled with the question of when a "conviction" occurs under state statutes providing for varying degrees of deferred adjudication. It settled on a three-factor definition in *In re Ozkok*. Under *Ozkok*, an alien was considered "convicted" when: (1) the alien had been found guilty or pleaded guilty or nolo contendre or had admitted sufficient facts to warrant a finding of guilty; (2) the judge had ordered some form of punishment; and (3) a judgment of guilt could be entered without further proceedings relating to guilt if the person violated terms of his probation or other court order. *See Ozkok*, 19 I&N Dec. at 551-52.

that the new statutory definition of "conviction" simply codified and refined the rules that the BIA had set forth in *In re Ozkok*, for determining whether, in the circumstance in which a formal judgment of conviction has been withheld prior to entry, a finding of guilt constitutes a "conviction" under the INA. *See id.* The BIA therefore held that, notwithstanding the new federal statutory definition of "conviction," *Luviano* continued to control when a conviction had been vacated or set aside, and thus Marroquin-Garcia had not been "convicted" for purposes of section 241(a)(2)(C) of the INA because his conviction for a non-narcotics related offense had been set aside pursuant to the same California expungement law in *Luviano*. *See id.* at 6.

The BIA referred this matter for my review as well. "If the Attorney General ultimately determines that a conviction for a firearms offense survives for immigration purposes despite a state procedure for expungement, the [Immigration and Naturalization] Service is free to reinstate deportation proceedings against the respondent here," the BIA explained. *Id.* "At present,however, the [Immigration and Naturalization] Service cannot seek the respondent's deportation under section 241(a)(2)(C) of the Act on the basis of a criminal case in which the plea of guilty has been set aside and vacated, and the charges have been dismissed." *Id.*

After the BIA referred its decision in this case to me, the Board issued its opinion in *Roldan*, *supra*. In that case, the BIA considered whether an expunged narcotics conviction could form the basis for an order of deportation in light of the new definition of conviction in IIRIRA. Although *Roldan* appears to involve a deferred adjudication,[5] the BIA found "it necessary to reconsider . . . the effect to be given to *any* state action, whether it is called setting aside, annulling, vacating, cancellation, expungement, dismissal, discharge, etc., of the conviction, proceedings, sentence, charge, or plea, that purports to erase the record of guilt of an offense pursuant to a state rehabilitative statute," 22 I&N Dec. at 520. The BIA determined that Congress intended to establish a uniform federal rule that precluded the recognition of subsequent state rehabilitative expungements of convictions. More precisely, the BIA found that because Congress clearly intended that an alien with a deferred adjudication should be considered convicted, Congress also must have intended that an alien with a "technical erasure of the record of conviction" should be considered convicted. *Id.* at 521. As the BIA stated,

---

[5] *See Roldan*, 22 I&N Dec. 514 ("the [state court] withheld adjudication of judgment, sentenced him to 3 years' probation and imposed several monetary penalties"); *id.* ("the respondent filed a motion in the Idaho state court for early release from probation and dismissal of the charge in accordance with the withheld judgment"); *id.* at 530 (Bd. Member Villageliu, dissenting in part and concurring in part) (characterizing majority's discussion of IIRIRA's definition in relation to vacated convictions as dicta). *But see id.* at 513 (describing respondent as "a first offender whose guilty plea was vacated").

> [i]t simply would defy logic for us, in a case concerning a conviction in a state which effects rehabilitation through the technical erasure of the record of conviction, to provide greater deference to that state's determination that a conviction no longer exists. Under either scenario, the state has decided that it does not consider the individual convicted based on the application of a rehabilitative statute.
>
> . . . Congress clearly does not intend that there be different immigration consequences accorded to criminals fortunate enough to violate the law in a state where rehabilitation is achieved through the expungement of records evidencing what would otherwise [have been] a conviction under section 101(a)(48)(A), rather than in a state where the procedure achieves the same objective simply through deferral of judgment.

*Id.* Based on its examination of the statutory text and legislative history, the BIA concluded that it would "interpret the new definition to provide that an alien is considered convicted for immigration purposes upon the initial satisfaction of the requirements of section 101(a)(48)(A) of the Act, and that he remains convicted notwithstanding a subsequent state action purporting to erase all evidence of the original determination of guilt through a rehabilitative procedure." *Id.* at 523. The BIA qualified its holding by noting that its decision did not address the situation where a state court vacates a conviction on the merits or on grounds relating to a statutory or constitutional violation. *See id.* The BIA thus overruled *Luviano* and *Marroquin*. *See id.* at 512.

In *Lujan-Armendariz*, the Ninth Circuit considered the BIA's decision in *Roldan*. The court was skeptical of the BIA's conclusion that the new definition covered vacated or set-aside convictions as well as deferred adjudications. *See* 222 F.3d at 742. The Ninth Circuit noted that the amendment said nothing about vacated convictions and could well be interpreted to establish only *when* a conviction occurred without determining what might be the effect of a later expungement. *See id.* at 741-42. The court did not decide this issue, however, and concluded instead that because the new definition in IIRIRA did not repeal the FFOA, equal protection principles mandated that aliens whose convictions had been expunged pursuant to state law were still entitled to the same treatment as those whose convictions had been expunged under federal law. *See id.* at 748-50. Therefore, an alien could not be deported based on a state conviction of simple possession where that conviction was expunged by the state, if a federal simple possession conviction could have been expunged under the FFOA. In other words, because the new definition of conviction did not repeal the FFOA, if an alien's conviction for a simple possession narcotics offense was expunged under a state equivalent of the FFOA, that conviction could not serve as the basis for an order of deportation, because had the alien received the expungement under the FFOA, that conviction could not form the basis for the order of deportation. *See id.* at 750.

With this history in mind, I now turn to the question of the proper interpretation of "conviction," at least with respect to non-narcotics cases.

## II.

### A.

As set forth above, the relevant statutory provision defines a "conviction" to be "a formal adjudication of guilt of the alien entered by a court[.]" INA § 101(a)(48)(A), 8 U.S.C. § 1101(a)(48)(A). This definition, though broad, is clearly not intended to encompass convictions that have been formally entered but subsequently reversed on appeal or in a collateral proceeding for reasons pertaining to the factual basis for, or procedural validity of, the underlying judgment. *Cf. In re P-*, 9 I&N Dec. 293 (A.G. 1961) (concluding that conviction set aside pursuant to writ of *coram nobis* for a constitutional defect could not serve as basis for order of deportation). Subsequently set-aside convictions of this type fall outside the text of the new definition because, in light of the subsequent proceedings, they cannot be considered formal adjudications of the alien's guilt.

This same logic, however, suggests that a different conclusion is warranted for convictions such as the one at issue in this case. As was noted in dissent in *Luviano*, state laws that authorize the subsequent expungement of a conviction typically do so for reasons that are entirely unrelated to the legal propriety of the underlying judgment of conviction—reasons, in other words, that are unrelated to concerns about the factual basis for, or the procedural validity of, the conviction. *See Luviano*, 21 I&N Dec. at 247-48 (Hurwitz, dissenting). These state expungement laws authorize a conviction to be expunged in order to serve rehabilitative ends and without reference to the merits of the underlying adjudication of guilt. *Id.* Such expunged convictions would appear, therefore, to survive as formal adjudications of guilt entered by a court.

Here, the state expungement law that provided relief for Marroquin-Garcia permits state courts to provide relief to all convicted defendants who seek it and have either completed their terms of probation or have been discharged prior to the termination of their probation. *See* Cal. Penal Code § 1203.4(a).[6] It affords a remedy that is readily distinguishable from, for example, an appellate court's reversal of a conviction on the merits, which is available only to persons who can demonstrate that the entry of the initial conviction was in error. Consistent with this conclusion, section 1203.4(a) of the California Penal Code does not, for purposes of California law, "eradicate a conviction or purge [the] defendant of the guilt established thereby." *See Adams v. County of Sacramento*, 1 Cal. Rptr. 2d 138, 141 (Cal. Ct. App. 1991); *accord*

---

[6] Section 1203.4(a) of the California Penal Code also authorizes state courts to provide the same relief in any "case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section." *Id.*

*id.* (explaining that the provision "was never intended to obliterate the fact that defendant has been 'finally adjudged guilty of a crime.'") (quoting *Meyer v. Board of Medical Examiners*, 206 P.2d 1085 (1949)). Indeed, a defendant who receives relief from the California provision still remains subject to certain state law civil disabilities that result from the initial entry of a formal adjudication of guilt, *i.e.*, the entry of a judgment of conviction.[7]

For these reasons, the relief provided by the California expungement law does not reflect a judgment about the merits of the underlying adjudication of guilt. It does not provide relief equivalent to a decision on appeal (or in a collateral proceeding) that reverses or vacates a judgment of conviction for insufficiency of the evidence or for procedural errors at trial. It serves only to ameliorate certain of the punitive consequences that attend a court's legally valid finding of guilt. Even though the initial judgment of conviction has been set aside pursuant to section 1203.4(a), the merits of the underlying judgment have not been called into question and adverse legal consequences continue to follow from it. Thus, that judgment would still appear to fall squarely within the plain language of the new federal statutory definition of "conviction," which defines a "conviction" under the INA to be "a formal judgment of guilt of the alien entered by a court." INA § 101(a)(48)(A), 8 U.S.C. § 1101(a)(48)(A).

The conclusion that the phrase "a formal judgment of guilt of the alien entered by a court" should be construed to encompass, by its plain terms, convictions that have been vacated or set aside pursuant to expungement statutes like section 1203.4(a) finds additional support in the treatment that the new federal statutory definition of "conviction" accords an "adjudication of guilt [that] has been withheld." *Id.* The new federal statutory definition of

---

[7] Section 1203.4(a) of the California Penal Code provides that "in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed." Cal. Penal Code § 1203.4(a). In addition, the provision states that "the order [granting relief] does not relieve [the defendant] of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery." *Id.* Finally, the provision provides that "[d]ismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm capable of being concealed upon the person or prevent his or her conviction under Section 1202.1." *Id.* California law further provides that numerous professional and business licenses may be denied, revoked, or suspended as a result of a conviction, notwithstanding that fact that it has been expunged pursuant to section 1203.4(a). *See Luviano*, 21 I&N Dec. at 246-47 (Hurwitz, dissenting); *see also Ramirez-Castro v. INS*, 287 F.3d 1172, 1175 (9th Cir. 2002) (noting that "California Penal Code section 1203.4(a) provides only a limited expungement even under state law"); *Garcia-Gonzales v. INS*, 344 F.2d 804, 808 (9th Cir. 1965) (explaining that it is "sheer fiction to say that the conviction is 'wiped out' or 'expunged'" by section 1203.4(a)).

"conviction" clearly provides that a defendant who has been found guilty by a judge or jury, or has pleaded guilty, has been "convicted" for purposes of the INA if the judge has "withheld a formal adjudication of guilt" but has nevertheless imposed penalties or restraints upon the defendant's liberty. *Id.* This part of the new federal statutory definition of "conviction" ensures that a defendant who has been found guilty of unlawful conduct, and has been punished for that conduct, will not avoid deportation by utilizing a state court procedure that spares the defendant from technically being adjudged "convicted."

The congressional determination that even some state court decisions to withhold adjudications of guilt prior to the entry of a judgment of conviction should be counted as convictions under the INA supports the more modest conclusion that the phrase "a formal judgment of guilt of the alien entered by a court" encompasses judgments of conviction that, at least in the ordinary case, have been entered but then vacated or set aside for reasons that do not go to the legal propriety of the original judgment and that continue to impose some restraints or penalties upon the defendant's liberty. A conviction that has been vacated or set aside pursuant to a law like the California statute ordinarily does not differ in substance from the type of state court decision to withhold an adjudication of guilt prior to entry that Congress has explicitly deemed to constitute a "conviction." The relief that the court provides in each type of case does nothing to call into question the propriety of the underlying adjudication of guilt.

Indeed, this case well illustrates the point. Even though Marroquin-Garcia's conviction has been set aside under section 1203.4(a), the underlying judgment of guilt still counts as a "conviction" under California law, and he not only has been subjected to punishment as a consequence of that conviction but also remains subject to various civil disabilities as well. The existence of these continuing legal disabilities certainly suggests that, for purposes of determining whether the initial adjudication of guilt may serve as the basis for an order of deportation, the expungement in question should not be equated with a court's setting aside a conviction on the merits in a collateral proceeding or on appeal.

Because even an "adjudication of guilt [that] has been withheld" may constitute a "conviction" under the new federal definition that Congress has enacted, there would appear to be no reason to construe the phrase "a formal judgment of guilt entered against the alien by a court" to exclude expunged convictions of the type at issue here. Indeed, in light of the treatment that the new federal statutory definition accords certain state court decisions to withhold an adjudication of guilt prior to the entry of a conviction, the conclusion that the new federal statutory definition fails to encompass the broad category of expunged convictions identified in *Luviano* would lead to anomalous results.

For example, an alien defendant who requested a state court to withhold an adjudication of guilt prior to the entry of a conviction could in many cases be subject to deportation. By contrast, an alien who was equally culpable of the same offense but waited until after the conviction had been entered to seek the relief that a provision such as the California expungement law may provide would not be subject to deportation. Under such an approach, a convicted alien who had been found guilty, had served a substantial period of time in prison, and whose conviction had been subsequently vacated, could end up in a more favorable position for purposes of federal immigration law than an alien who had never had a conviction entered against him or her and had never served any time in prison for the offense. It is doubtful that Congress would have intended to provide greater relief under the immigration laws to alien defendants who had been convicted and served long prison terms than to equally culpable alien defendants who had never been formally convicted and who had been subject to comparatively minor restraints on their liberty. There would appear to be little basis, therefore, for construing the seemingly plain definition of "conviction" that Congress has now enacted to accord such disparate treatment to equally culpable aliens.[8]

As discussed above, the Ninth Circuit reached a different conclusion only with respect to a narcotics offense that would have fallen within the Federal First Offender Act had the charges been brought in federal court. *See Lujan-Armendariz*, 222 F.3d at 750. With respect to offenses that do not fall within the FFOA or a state equivalent, the Ninth Circuit held that the BIA's interpretation in *Roldan*—i.e., that the new definition of conviction covers vacated or set-side state convictions as well as deferred adjudications—was a permissible construction of the new statutory definition of conviction. *See Murillo-Espinoza v. INS*, 261 F.3d 771, 774 (9th Cir. 2001). And other circuits to address the issue have agreed with the BIA that a vacated conviction falls within the new definition of conviction. *See Renteria-Gonzalez v. INS*, 322 F.3d 804, 812-14 (5th Cir. 2002) (applying plain meaning of new IIRIRA definition to find that vacated federal conviction for trafficking in aliens remained conviction for purposes of INA); *United States v. Campbell*, 167 F.3d 94, 98 (2d Cir. 1999) (applying the plain language of new definition to find that vacated conviction for possession of

---

[8]  My conclusion is, as was demonstrated in the Board's decision in *Roldan*, 22 I&N Dec. at 514-19, consistent with a proper reading of the legislative history underlying the enactment of 8 U.S.C. § 1101(a)(48)(A). Congress "deliberately broaden[ed]" the meaning of conviction and made guilt—not rehabilitation—the dispositive factor in determining whether an individual is to be removed from the United States. *See* H.R. Rep. No. 104-828, at 224 (1996). Legislators noted that "there exist in the various States a myriad of provisions for ameliorating the effects of a conviction. As a result, aliens who have clearly been guilty of criminal behavior and who Congress intended to be considered 'convicted' have escaped the immigration consequences normally attendant upon a conviction." *Id.*

controlled substance constituted conviction for sentencing purposes; "no provision excepts from this definition a conviction that has been vacated").

Because this case does not involve a conviction for a narcotics offense and a subsequent rehabilitation either under the FFOA or state law, I do not decide whether the Ninth Circuit was correct in concluding that the new definition of conviction did not repeal the FFOA, and therefore, as the Ninth Circuit held, equal protection guarantees require that an alien with a state conviction who would have been eligible for FFOA relief had the conviction been rendered in federal court receive the same treatment as a alien with a federal conviction. I do note, however, that at least three circuits disagree with the Ninth Circuit. *See Acosta v. Ashcroft*, 341 F.3d 218, 227 (3d Cir. 2003) (concluding that "it seems plain that rational-basis review is satisfied here"); *Gill v. Ashcroft*, 335 F.3d 574, 579 (7th Cir. 2003) (finding Ninth Circuit's decision "untenable" and declining to follow it); *Vasquez-Velezmoro v. INS*, 281 F.3d 693, 697-99 (8th Cir. 2002) (disagreeing with Ninth Circuit and declining to address possible repeal of FFOA by IIRIRA because no equal protection violation for treating alien convicted under state law differently from alien convicted under federal law where the sentences were dissimilar and Congress could have intended to provide relief only for federal convictions, over which Congress would have control). Indeed, although the BIA acquiesces in the decision in the Ninth Circuit, it correctly declines to follow it outside of that circuit. *See In re Salazar-Regino*, 23 I&N Dec. 223, (BIA 2002) ("[E]xcept in the Ninth Circuit, a first-time simple drug possession offense expunged under a state rehabilitative statute is a conviction under section 101(a)(48)(A) of the [INA].")

There remains the final question whether the expungement that Marroquin-Garcia received in this case removes that conviction from the scope of the new federal statutory definition of "conviction." As has already been noted, section 1203.4(a) of the California Penal Code does not serve to provide relief that is based on a judgment about the legal propriety of the underlying judgment of conviction. It merely provides a means by which certain defendants who have been lawfully convicted and subjected to punishment may be relieved of many, though not all, of the remaining legal consequences that normally attend an adjudication of guilt. Therefore, notwithstanding the relief that petitioner received under section 1203.4(a) of the California Penal Code, he has been "convicted" for purposes of what was then section 241(a)(2)(C) of the INA.