RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0162p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

TUSHAR PRAVINKUMAR GOR,

                *Petitioner,*

      *v.*

ERIC H. HOLDER, JR., Attorney General,

                *Respondent.*

No. 08-3859

On Petition for Review from a Final Order
of the Board of Immigration Appeals.
No. A38 963 247.

Argued: April 22, 2009

Decided and Filed: June 4, 2010

Before: BATCHELDER, Chief Judge; COLE, Circuit Judge; LAWSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Philip A. Eichorn, LAW OFFICES, Cleveland, Ohio, Jonathan A. Bartell, LAW OFFICES OF JONATHAN A. BARTELL, Cleveland, Ohio, for Petitioner. Kiley L. Kane, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Philip A. Eichorn, LAW OFFICES, Cleveland, Ohio, Jonathan A. Bartell, LAW OFFICES OF JONATHAN A. BARTELL, Cleveland, Ohio, for Petitioner. Kiley L. Kane, John S. Hogan, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

      LAWSON, D. J., delivered the opinion of the court. BATCHELDER, C. J. (pp. 21-24), delivered a separate concurring opinion. COLE, J. (pp. 25-29), delivered a separate opinion, concurring in part and concurring in the judgment.

_____

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

DAVID M. LAWSON, District Judge.  Petitioner Tushar Gor, a citizen of India, seeks review of a removal order entered on the ground that Gor is an "alien . . . convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment."  8 U.S.C. § 1227(a)(2)(E)(i).  Gor was convicted under section 2919.21(B) of the Ohio Revised Code, which prohibits "abandon[ment], or fail[ure] to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support."  Ohio Rev. Code Ann. § 2919.21(B).  Although he raises four issues in his petition, the main thrust of Gor's argument is that his crimes amounted to non-support, not child abandonment, and therefore he has not committed an offense that subjects him to removal.  Gor did not raise any of his four issues initially before the Immigration Judge or the Board of Immigration Appeals, nor did he file a timely petition for review of the final order of removal.  He did raise these issues in a motion before the BIA to reopen the proceedings *sua sponte*, which motion was denied, and Gor has petitioned for review of that decision as well.  The government has filed a motion to dismiss claiming that we have no jurisdiction to review the original decision of the BIA because of Gor's untimely petition, and we likewise have no jurisdiction to review the denial of the motion to reopen because that decision is committed to the BIA's discretion.  We agree that we have no jurisdiction to review the original BIA decision.  We also must conclude that we have no jurisdiction to review the denial of the motion to reopen *sua sponte*, although the Supreme Court's recent decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010), casts considerable doubt on our circuit precedent that dictates that result.  Therefore, we will grant the government's motion to dismiss, and urge the *en banc* court to reexamine the validity of our prior cases in this area.

I.

The petitioner, a twenty-nine-year-old citizen of India, was admitted to the United States as a lawful permanent resident on February 27, 1985, when he was four years old.  Both of his parents are naturalized United States citizens who retired to live in India in January 2005.  The petitioner's brother resides in the United States, and the petitioner's own ties to India are limited to three trips he made there during the 1990s for a total period of less than three months.  The petitioner earned an associate's degree in computer electronics, but upon graduation worked at various manual-labor jobs outside of the computer electronics field.  The petitioner's connections to the United States grew stronger when, at the age of seventeen, he fathered twin sons out of wedlock.  It is his failure to provide financial support for his sons that causes his current immigration difficulties.

Gor was charged and convicted of four counts of felony non-support under Ohio Revised Code section 2919.21(B) on September 22, 2004, and three more counts of the same charge on May 26, 2006.  In the first case, he was charged with "recklessly failing to provide support as established by a court order" when he fell behind on his child support obligations, and he was sentenced to three years of community control.  However, Gor apparently failed to report to his probation officer, and when the child support arrearage continued to accumulate, he was charged with three more counts of "abandon[ing] or fail[ing] to provide support" and was convicted on May 26, 2006.  This time, he was sentenced to a twenty-four-month custody term (eight months on each of the counts).

Shortly after the 2006 sentencing, on June 16, 2006, the U.S. Department of Justice issued the petitioner Form I-862, Notice to Appear, which formally placed him in removal proceedings.  Master calendar hearings were held in the petitioner's case on October 18, 2006, November 15, 2006, and February 20, 2007, and the petitioner appeared for all of those hearings via a telemonitor from the Orient Confinement Facility in Ohio.  During the October 18, 2006 hearing, the immigration judge advised the petitioner that he had a right to a lawyer at his own expense, and if he could not afford

a lawyer, the court would give him "a list of organizations that might represent you at low cost or no charge but they do not have to represent you." App'x at 27. Although the petitioner was never provided with such a list, his hearing was adjourned until November 15, 2006 to allow him the opportunity to retain counsel. The master calendar hearing was adjourned for the second time on November 15, 2006 when the petitioner still had not found a lawyer. At that point, the IJ advised Gor that if he did not retain a lawyer by the next hearing set for February 20, 2007, "we'll have to proceed without a lawyer." Suppl. App'x at 68-69. On February 20, the petitioner, still incarcerated, appeared without counsel again. The following exchange took place during the hearing:

> Q.    Sir, we had a prior proceeding in this case and I've advised you of your rights to a lawyer. Do you have a lawyer, sir?
> A.    Not at this time, Sir, I contacted about 75 lawyers, each one I got a response from said they can't do it for under $2,000 which right now I don't have the capable means of, as I'm locked up.
> Q.    Okay, sir, well, I'm going to proceed with your case. I stated before, U.S. Government doesn't provide you with a lawyer and if a charitable organization's not  going to represent you, then you're going to have to proceed without a lawyer. . . . Do you understand?
> A.    Yes, Sir.

App'x at 30-31. During the hearing, the petitioner admitted all the allegations made in the Notice to Appear, and the IJ found him in violation of section 237(a)(2)(E) as having been convicted of a crime of child neglect or abandonment. Since the petitioner indicated a desire to file for asylum, the judge set the case for an individual hearing.

At the final individual hearing on April 10, 2007, Gor, again appearing *pro se*, moved for cancellation of removal under section 240A of the Immigration and Nationalization Act. The IJ denied Gor's request.

On May 10, 2007, the petitioner appealed to the BIA, still proceeding *pro se*, challenging only the merits of the cancellation-of-removal determination. On October 5, 2007, the BIA affirmed the Immigration Judge's decision without opinion. Gor did not file a petition for review of this decision within ninety days.

On May 20, 2008, Gor had retained counsel, who moved the BIA to reopen removal proceedings *sua sponte* under 8 C.F.R. § 1003.2(a).  For the first time, the petitioner raised the following four arguments: (1) his Ohio state convictions of non-support are not removable offenses under 8 U.S.C. § 1227(a)(2)(E)(i); (2) the IJ erred when he did not provide the petitioner with a list of low-cost immigration attorneys in the area; (3) the petitioner was denied due process when the IJ proceeded with the removal hearing despite the petitioner's inability to retain an attorney; and (4) the IJ erred when he failed to advise the petitioner of the availability of and consider discretionary relief from removal available to the petitioner.  The BIA denied the motion on June 11, 2008, finding that the case was "not an exceptional situation" since "[a]ll of the claims presented by the respondent . . . could have been presented to the Board on appeal," and the case law Gor cited came from "outside of the Sixth Circuit," was "unpublished[,] or not directly relevant."  App'x at 9.

The petitioner filed a timely petition for review of this decision, raising the four arguments presented to the BIA in his petition to reopen.  As noted earlier, the government filed a motion to dismiss for lack of jurisdiction.

## II.

Before we may consider the merits of the petitioner's claims, we must address the question of jurisdiction.  The government had moved to dismiss the petition, arguing that the underlying removal order is beyond our jurisdiction because the petitioner did not file a petition to review that order within ninety days after it was issued, as required by 8 U.S.C. § 1252(b)(1) (which now requires a review petition to be filed "not later than 30 days after the date of the final order of removal"); the petitioner's arguments on appeal are not exhausted because the petitioner never properly presented them to the BIA for consideration; and this court lacks jurisdiction to review the BIA's decision not to reopen the proceedings *sua sponte* because that decision was based on the agency's exercise of discretion and Congress has stripped courts of "jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the

Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). The petitioner responds that his claims are based on the Constitution and raise questions of law, and Congress has provided that the jurisdiction-stripping statutes are not to "be construed as precluding review of constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D).

**A.  Order of Removal**

The BIA affirmed the IJ's final order of removal on October 5, 2007. Generally, once an alien is found to be removable in a final agency order, he can file one motion to reconsider and one motion to reopen the removal proceedings with the agency, *see* 8 U.S.C. § 1229a(c)(6)-(7), or he can proceed directly to a court of appeals. 8 U.S.C. § 1252(b)(2). The time limits for filing a motion for reconsideration and a motion to reopen are "crystal clear." *Randhawa v. Gonzales*, 474 F.3d 918, 920 (6th Cir. 2007). A motion to reconsider must be filed with the agency "within 30 days of the date of entry of a final administrative order of removal," 8 U.S.C. § 1229a(c)(6)(B), and a motion to reopen must be filed "within 90 days of the date of entry of a final administrative order of removal," 8 U.S.C. § 1229a(c)(7)(C)(i). The petitioner did not meet either of these deadlines. The BIA may equitably toll the ninety-day filing deadline for filing a motion to reopen where, for example, a petitioner has received ineffective assistance of counsel. *Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008) (citing *Ljucovic v. Gonzales*, 144 F. App'x 500, 503 (6th Cir. 2005)). However, the petitioner in this case has not raised an ineffective assistance of counsel argument (he was proceeding up to the point of the final agency ruling without counsel) or suggested other grounds for equitable tolling.

Besides equitable tolling, the regulations set forth four other exceptions to the timely filing of a motion to reopen with the agency: deadlines are relaxed for "motions to reopen (1) filed by aliens who are deported *in absentia*; (2) filed by aliens seeking asylum or withholding of deportation based on changed country circumstances; (3) jointly filed by the alien and the INS; and (4) filed by the INS where the basis of the motion is fraud in the original proceeding or a crime that would support termination of

asylum." *Harchenko v. INS*, 379 F.3d 405, 409 (6th Cir. 2004) (citing 8 C.F.R. §§ 1003.2(c)(3)(i)-(iv)). None of those exceptions applies here.

The alien's third option following a final removal order is appealing directly to a court of appeals. A separate deadline of thirty days exists for appealing an order of removal to an appropriate court of appeals. 8 U.S.C. § 1252(b)(1)-(2). This time limitation is enforced strictly, and courts lack jurisdiction to review a BIA decision when a petitioner fails to seek judicial review of an order within the applicable time period. *See Prekaj v. INS*, 384 F.3d 265, 268 (6th Cir. 2002).

After a final order of removal is entered by the BIA, pursuing further review within the agency does not toll the time period for seeking judicial review in the court of appeals under 8 U.S.C. § 1252(b)(1) or divest an agency decision of its finality. *Stone v. INS*, 514 U.S. 386, 405-06 (1995); *see Mu Ju Li v. Mukasey*, 515 F.3d 575, 578 (6th Cir. 2008). To the contrary, "[the removal] order being final when issued, an alien has 90 days [now 30 days, *see* 8 U.S.C. § 1252(b)(1)] from that date to seek [judicial] review. The alien, if he chooses, may also seek agency reconsideration of the order and seek review of the disposition upon reconsideration within 90 days of its issuance. Where the original petition is still before the court, the court shall consolidate the two petitions." *Stone*, 514 U.S. at 405-06. The obverse of that rule is also true: a petition for appellate-court review does not toll the time for filing a motion for reconsideration with the agency. *Randhawa*, 474 F.3d at 921. Therefore, an alien must observe separate time limitations for proceedings within the agency and within the judicial system, even if it results in several petitions for review ultimately pending before the court of appeals.

Once the BIA affirmed the final order of removal in this case, Gor had several options. First, he could have moved to reopen the removal proceedings within ninety days of October 5, 2007. Second, he could have moved for reconsideration within thirty days of the order. Third, he could have petitioned this court directly, provided he did that within thirty days of October 5. The petitioner took none of these steps within the time allowed – most likely because he was still unrepresented and incarcerated. Instead, he waited for 228 days until May 20, 2008 to file a motion for the agency to reopen its

proceedings *sua sponte*. Because the petition for review of the final order of removal was untimely, the government is correct that we have no jurisdiction to address it, and that aspect of its motion to dismiss must be granted.

## B. Exhaustion

According to 8 U.S.C. § 1252(d)(1), the circuit court has no jurisdiction to review a petition challenging a final order of removal unless "the alien has exhausted all administrative remedies available to the alien as of right." *See Hassan v. Gonzales*, 403 F.3d 429, 432 (6th Cir. 2005) (citing *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994)) (describing exhaustion as a jurisdictional issue). Section 1252(d)(1)'s exhaustion requirement serves to ensure that the agency has had a full opportunity to consider a petitioner's claims, to avoid premature interference with agency's processes, and to allow the BIA to compile a record for judicial review. *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004). Therefore, each of the petitioner's claims must have been presented to the BIA before the petitioner may seek review in the court of appeals. *Ibid.* (citing *Perkovic*, 33 F.3d at 619).

Notably, however, "[t]he streamlined-affirmance-without-opinion procedure is *not* a dismissal, but instead a review of the merits of an appeal." *Hassan*, 403 F.3d at 432 (citing *Denko v. INS*, 351 F.3d 717, 729 (6th Cir. 2003)). Likewise, presenting an issue in a motion to reopen *sua sponte* is sufficient to exhaust that issue. *See Toledo-Hernandez v. Mukasey*, 521 F.3d 332, 336 (5th Cir. 2008) (holding that "if the BIA has never been given the opportunity to consider an issue but has the mechanisms to remedy it, even where the 90-day period for presenting a motion to reopen has passed, a petitioner must first present the issue to the Board in the form of a motion to reopen for exceptional circumstances."); *Padilla v. Gonzales*, 470 F.3d 1209, 1213-14 (7th Cir. 2006) (holding that a claim could be exhausted if it were denied by the agency on a motion to reopen *sua sponte*); *cf. Qeraxhiu v. Gonazales*, 206 F. App'x 476, 482 (6th Cir. Nov. 15, 2006) (stating that because the appellant "did not raise his claims of ineffective assistance of counsel or request exercise of the BIA's *sua sponte* authority

to reopen under 8 C.F.R. § 1003.2(a), the issues are not exhausted and are not properly before this court on review.").

The petitioner in this case presented each of the four issues raised in this court to the BIA in his tardy motion to reopen the proceedings. As discussed below, it is not clear that the BIA considered the merits of those issues. However, the petitioner's presentation satisfied the requirements of 8 U.S.C. § 1252(d)(1).

## C.  Motion to Reopen *Sua Sponte*

The government argues that we have no jurisdiction to review the BIA's denial of the untimely motion to reopen because of 8 U.S.C. § 1252(a)(2)(B), which states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–
> . . .
>      (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B)(ii). The government correctly notes that BIA has discretion to reopen its proceedings on its own "at any time." 8 C.F.R. § 1003.2(a) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."). Since the agency's regulations characterize the decision as discretionary, the government reasons, section 1252(a)(2)(B) bars review. The government also points out that our precedent indicates that decisions committed to agency discretion by regulation are beyond judicial review. *See Barry*, 524 F.3d at 724; *Harchenko*, 379 F.3d at 410-11.

In *Kucana v. Holder*, 130 S. Ct. 827 (2010), the Supreme Court rejected the idea that an agency can curtail the jurisdiction of an Article III court and held that "[a]ction on motions to reopen, made discretionary by the Attorney General only, . . . remain

subject to judicial review," *id*. at 840.  In *Kucana*, the Court construed the jurisdiction-stripping provision in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009-546, relied upon by the government here.  That provision is found in 8 U.S.C. § 1252(a)(2)(B)(ii), quoted above.  The Seventh Circuit found this statute to bar review of a decision by the BIA denying the petitioner's late motion to reopen removal proceedings because the Attorney General had made such decisions discretionary by regulation.  The Court noted that Congress had not codified the provision in the regulation making such decisions discretionary.  The Court read the phrase "specified under this subchapter" in section 1252(a)(2)(B)(ii) to mean that "Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute."  *Kucana*, 130 S. Ct. at 836-37.

The Court concluded that Congress intended judicial review of motions to reopen to be as broad as it was before the IIRIRA was enacted: "The BIA has broad discretion, conferred by the Attorney General, 'to grant or deny a motion to reopen,' 8 CFR § 1003.2(a), but courts retain jurisdiction to review, with due respect, the Board's decision."  *Kucana*, 130 S. Ct. at 838.  The Court found the idea of an agency regulation placing a matter beyond court jurisdiction to contravene the "presumption . . . 'that executive determinations are generally subject to judicial review,'" *id*. at 839 (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995)), "the longstanding exercise of judicial review of administrative rulings on reopening motions," *id.* at 831, and the "congressional design" that "[Congress], and only [Congress], would limit the federal courts' jurisdiction," *id.* at 839-40.

The Court's holding in *Kucana* was clear: "While Congress pared back judicial review in IIRIRA, it did not delegate to the Executive authority to do so."  *Id.* at 840.  Were it otherwise, "the Executive would have a free hand to shelter its own decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions 'discretionary.'"  *Ibid*.

We therefore reject the government's argument that review of the denial of the petitioner's motion to reopen is barred by the confluence of 8 U.S.C. § 1252(a)(2)(B)(ii) and 8 C.F.R. § 1003.2(4).

The government also cites our precedents – *Harchenko v. INS* and *Barry v. Mukasey* – as an additional ground for finding a lack of jurisdiction to review the denial of the motion to reopen.  In *Harchenko*, a panel of this court was asked to overturn the BIA's refusal to reopen a matter *sua sponte*.  The court observed that the decision whether to reopen was within the BIA's discretion, and looking to the Supreme Court's decision in *Heckler v. Chaney*, 471 U.S. 821 (1985), held that the court had no jurisdition to review the administrative decision.  The panel stated: "The decision whether to invoke *sua sponte* authority is committed to the unfettered discretion of the BIA. . . . 'Therefore, the very nature of the claim renders it not subject to judicial review.'"  *Harchenko*, 379 F.3d at 410-11 (quoting *Luis v. INS*, 196 F.3d 36, 40 (1st Cir. 1999) (reasoning that where there is no meaningful standard against which to judge the agency's exercise of discretion, *Heckler v. Chaney*, 471 U.S. at 830, bars judicial review)). Following *Harchenko*, the court in *Barry* held that the court of appeals has no jurisdiction to review the denial of a motion to reopen *sua sponte*.  *See Barry*, 524 F.3d at 724 (stating that where the BIA declines to exercise its *sua sponte* authority to reopen removal proceedings, "irrespective of whether that decision was proper . . . the BIA's determination to forgo the exercise of its *sua sponte* authority is a decision that [courts] are without jurisdiction to review").

Those decisions remain the law of this circuit.  "A published prior panel decision 'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'"  *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009) (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985)); *see also United States v. Barnaell*, 477 F.3d 844, 850 n.4 (6th Cir. 2007) (citing *Meeks v. Illinois Cent. Gulf R.R.*, 738 F.2d 748, 751 (6th Cir. 1984)).  The same injunction appears in Sixth Circuit Rule 206(c), which reads: "Reported panel opinions

are binding on subsequent panels." *Kucana* cannot fairly be read as overruling those cases, since the Supreme Court specifically expressed "no opinion on whether federal courts may review [BIA refusals] to reopen removal proceedings *sua sponte*." 130 S. Ct. at 839 n.18. Therefore, we are constrained to hold that we lack jurisdiction to review the BIA's denial of the petitioner's motion to reopen *sua sponte*.

However, we believe the Supreme Court's reasoning set out in *Kucana* undermines the continuing validity of *Harchenko* and *Barry*, since both cases are based on the same premise rejected in *Kucana*. *Barry* adopts the holding from *Harchenko* without analysis or discussion. *Harchenko*, in turn, after citing cases from other circuits, relies heavily on the Supreme Court's decision in *Heckler v. Chaney*, 470 U.S. 821 (1985). *Heckler* held that when *Congress* commits to an agency discretionary authority to perform an act without prescribing meaningful governing standards, that exercise of discretion is placed beyond judicial review by section 701(a)(2) of the Administrative Procedures Act (APA). *Id.* at 830; *see* 5 U.S.C. § 701(a)(2) (authorizing judicial review of final agency action "except to the extent that . . . agency action is committed to agency discretion by law"). It does not support a conclusion that an *agency* can strip a court of jurisdiction to review its own actions by enacting regulations that deem these actions discretionary. *Barry* and *Harchenko* may have misread *Heckler* by applying it to agency decisions made discretionary by regulation, that is, by the agency itself, effectively permitting the agency to insulate its own decisions from judicial review – a proposition soundly rejected by the Court in *Kucana*.

*Heckler* itself rejected a claim by several death row inmates who sought a mandatory injunction to compel the Food and Drug Administration to enforce provisions of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, (FDCA) against officials in states that had adopted the lethal injection method for carrying out a death sentence. The inmates argued that the FDCA prohibited off-label use of drugs, and that the drugs chosen by the states could not be used for that purpose until the FDA approved the drugs as "safe and effective" for human execution. *Id.* at 827. The Court held that the FDA's decision not to institute enforcement action was shielded from judicial review

by section 701(a)(2) of the APA. In construing that section, the Court cited *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), which characterized that statutory bar to judicial review as "a very narrow exception." *Overton Park*, 401 U.S. at 410. The *Overton Park* Court explained, "The legislative history of the Administrative Procedure Act indicates that [this exception] is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Ibid.* (citing S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)). The *Heckler* court stated that under section 702(a)(2), "review is not to be had if the *statute* is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the *statute* ('*law*') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Heckler*, 470 U.S. at 830 (emphasis added). The Court concluded that "[t]he general exception to reviewability provided by § 701(a)(2) for action 'committed to agency discretion' remains a narrow one" and left "to *Congress*, and not to the courts, the decision as to whether an agency's refusal to institute proceedings should be judicially reviewable." *Id.* at 838 (emphasis added).

In *Heckler*, the Court determined that *Congress* can restrict the jurisdiction of federal courts over certain agency actions under the APA by deeming them "discretionary" and drafting "statutes" that provide a court "no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 830. It does not support a conclusion that an *agency* can strip a court of jurisdiction to review its own actions by enacting regulations that deem these actions discretionary. Recognizing such authority would fundamentally alter the constitutional checks and balances put in place by the separation of powers doctrine. *See Kontrick v. Ryan*, 540 U.S. 443, 452 (2004) (holding that under the separation of powers doctrine, only Congress can expand or contract the subject-matter jurisdiction of a lower Article III court); *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("Congress has the constitutional authority to define the jurisdiction of the lower federal courts."); *INS v. Chadha*, 462 U.S. 919, 957-

58 (1983) (holding that Congress may alter federal court jurisdiction through legislation, but to do so it must satisfy the requirements of bicameralism and presentment).

*Kucana* reinforces *Heckler*'s prescription that the narrow exception to judicial review of agency decisions must originate from Congress, not the agency itself. The majority of cases finding no jurisdiction to review denials of motions to reopen *sua sponte* on account of *Heckler*, including *Barry* and *Harchenko*, do so on the basis of standardless *regulations*. *See, e.g., Luis v. INS*, 196 F.3d 36, 40 (1st Cir. 1999); *Ali v. Gonzales*, 448 F.3d 515, 518 (2d Cir. 2006); *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 474-75 (3d Cir. 2003); *Doh v. Gonzales*, 193 F. App'x 245, 246 (4th Cir. 2006) (per curiam); *Enriquez-Alvarado v. Ashcroft*, 371 F.3d 246, 248-50 (5th Cir. 2004); *Harchenko*, 379 F.3d at 410-11; *Pilch v. Ashcroft*, 353 F.3d 585, 586 (7th Cir. 2003); *Ekimian v. INS*, 303 F.3d 1153, 1159 (9th Cir. 2002); *Belay-Gebru v. INS*, 327 F.3d 998, 1000-01 (10th Cir. 2003); *Anin v. Reno*, 188 F.3d 1273, 1279 (11th Cir. 1999). The only two cases that cite a *statute* in concluding that such decisions are unreviewable point to 8 U.S.C. § 1103(g)(2), which generally authorizes "[t]he Attorney General [to] establish such regulations . . . as the Attorney General determines to be necessary for carrying out this section." *See Tamenut v. Mukasey*, 521 F.3d 1000, 1004 (8th Cir. 2008) (en banc) (per curiam) ("The regulation establishing the BIA's authority to reopen *sua sponte* was promulgated pursuant to a general grant of regulatory authority that sets no standards for this decision. *See* 8 U.S.C. § 1103(g)."); *Lenis v. U.S. Attorney Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008) ("[N]o statute expressly authorizes the BIA to reopen cases *sua sponte*; rather, the regulation at issue derives from a statute that grants general authority over immigration and nationalization matters to the Attorney General, and sets no standard for the Attorney General's decision-making in this context. *See* 8 U.S.C. § 1103(g)(2)."). Under that rationale, however, *any* agency decision made under a regulation in which the agency grants itself discretion to act would be beyond judicial review where Congress granted general authority to the agency to make rules, which is to say, in virtually every case. That result directly contradicts *Kucana*'s central holding.

Moreover, the regulation at issue in *Kucana*, 8 C.F.R. § 1003.2, is the same one that the courts of appeals have held defines the BIA's discretion over *sua sponte* reopening so broadly as to preclude review. In deeming such decisions unreviewable, the courts have pointed to the breadth of the first paragraph of the regulation:

> (a) General. The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision. . . . The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board, subject to the restrictions of this section. The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.

8 C.F.R. § 1003.2(a); *see, e.g., Harchenko*, 379 F.3d at 411 ("No language in the provision requires the BIA to reopen a deportation proceeding under any set of particular circumstances. Instead, the provision merely provides the BIA the discretion to reopen immigration proceedings as it sees fit.") (internal quotation marks and citation omitted)). Yet the BIA's authority to deny motions to reopen, as set out in the second sentence of the regulation, is no less broad. The second sentence states that the BIA's discretion regarding motions to reopen is "subject to the restrictions of this section," but the rest of the regulation imposes no limits on the BIA's authority to refuse such motions. Rather, it reads in relevant part:

> (c) Motion to reopen.
>
> (1) A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material. A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation. *A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subject to the hearing.*

8 C.F.R. § 1003.2(c) (emphasis added).  As the Supreme Court has noted regarding materially identical language in 8 C.F.R. § 3.2, the predecessor to § 1003.2, the regulation "is couched solely in negative terms; it requires that under certain circumstances a motion to reopen be denied, but does not specify the conditions under which it shall be granted." *INS v. Doherty*, 502 U.S. 314, 323 (1992).  By consequence, the Court concluded, "[t]he granting of a motion to reopen is thus discretionary." *Id.* at 323.  In other words, § 1003.2 no more fetters the BIA's discretion to deny motions to reopen than it does the BIA's discretion to reopen proceedings *sua sponte*.  Nor does the statute pursuant to which this regulation is promulgated, 8 U.S.C. § 1103(g)(2) ("The Attorney General shall establish such regulations . . . as the Attorney General determines to be necessary for carrying out this section."), provide any evident limit to the agency's authority.  If courts nonetheless retain jurisdiction to review the BIA's discretionary decision not to grant a motion to reopen, it is difficult to understand how the BIA's equally broad discretion not to reopen proceedings *sua sponte* entirely bars judicial review.

Because *Barry* and *Harchenko* stand on the same tenuous foundation that an agency acting on its own can insulate its decisions from judicial review – a foundation to which *Heckler* lends no support and which has been undermined conclusively by *Kucana* – we believe those precedents ought to be reexamined by the *en banc* court.

Gor's case provides a clear example of why review of BIA decisions is necessary.  The IJ who conducted Gor's hearing violated BIA regulations by neglecting to provide Gor with a list of free legal service-providers or confirm that Gor had received this list.  *See* 8 C.F.R. § 1240.10(a).  "It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).  Moreover, "[w]here a prescribed procedure is intended to protect the interests of a party before the agency, 'even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed.'" *Id.* (quoting *Vitarelli v. Seaton*, 359 U.S. 535, 547 (1959) (Frankfurter, J., concurring)).  Here, the IJ's failure to abide by the agency's own

regulations, insofar as it impeded Gor's ability to retain counsel, likely violated Gor's right to due process. *Cf. Picca v. Mukasey*, 512 F.3d 75, 78-80 (2d Cir. 2008) (vacating removal order where IJ failed to comply with 8 C.F.R. § 1240.10(a)(3) because petitioner's access to counsel in immigration proceedings implicates the "'fundamental notions of fair play underlying the concept of due process'") (quoting *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991)); *Snajder v. INS*, 29 F.3d 1203, 1206-07 (7th Cir. 1994) (vacating removal order where IJ violated petitioner's right to counsel by failing to obey BIA regulation requiring re-appraisal of the petitioner's rights following lodging of an additional charge). Had Gor been represented during his hearing, counsel might well have presented the colorable legal arguments, now raised before us, that Gor's convictions for failure to pay child support do not render him subject to deportation under the INA. In other words, but for the IJ's apparent due process violation, there is a strong possibility that Gor could have demonstrated his deportation is contrary to law.

In this case, the petitioner's motion to reopen also was based in part on the claim that the IJ failed to develop the record sufficiently to establish that the petitioner's convictions made him removable under 8 U.S.C. § 1227(a)(2)(E)(i). That claim deserves some consideration. Normally, courts use a categorical approach when interpreting a state criminal statute, focusing on the "'intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation'." *Patel v. Ashcroft*, 401 F.3d 400, 409 (6th Cir. 2005) (quoting *Chery v. Ashcroft*, 347 F.3d 404, 407 (2d Cir. 2003)). Under that approach, courts look at the "'elements and the nature of the offense of conviction, rather than to the particular facts relating to the petitioner's crime.'" *Ibid.* (quoting *Leocal v. Ashcroft*, 543 U.S.1, 6-7 (2004)); *see also Taylor v. United States*, 495 U.S. 575 (1990). Where the statute punishes diverse categories of criminal acts, some of which would subject an alien to removal and some of which would not, courts and the agency apply the so-called "modified categorical approach" to analyzing an alien's conduct. *See Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1020 (9th Cir. 2005); *Mehboob v. Attorney Gen.*, 549 F.3d 272, 275 (3d Cir. 2008); *James v. Mukasey*, 522 F.3d 250, 254-55 (2d Cir. 2008); *Jaadan v. Gonzales*, 211 F. App'x 422, 427 (6th Cir. 2006). If the statute is considered divisible, the agency can refer to the

record underlying the conviction – the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy, but not the underlying facts – to ascertain whether the alien's conviction falls within the part of the statute that permits removal. *James*, 522 F.3d at 254 (citing *Dickson v. Ashcroft*, 346 F.3d 44, 48-49 (2d Cir. 2003); *Jaadan*, 211 F. App'x at 427. "'[T]he disjunctive phrasing of the statute of conviction will . . . invite inquiry into the specifics of the conviction.'" *Mendieta-Robles v. Gonzales*, 226 F. App'x 564, 567 (6th Cir. 2007) (quoting *Singh v. Ashcroft*, 383 F.3d 144, 148 (3d Cir. 2004)).

Although the statute under which the petitioner was found to be removable sets forth a clear definition for the term "domestic violence," Congress has not defined the terms "child abuse," "child neglect" or "child abandonment" in the Immigration and Nationality Act. And although the BIA often considers child support arrearage as a negative factor in the exercise of its discretion, *see, e.g., In re Vicheth Sek a.k.a. Vicheth Ricky Sek*, 2004 WL 1739102 (BIA June 8, 2004), it has never held that a failure to pay child support qualifies as a removable offense on its own. Nor has any court of appeals held so. Recognizing that section 237(a)(2)(E)(i) was enacted in the Illegal Immigration Reform and Immigration Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 2009 (1996) ("IIRIRA"), "as part of an aggressive legislative movement to expand the criminal grounds of deportability in general and to create a 'comprehensive statutory scheme to cover crimes against children' in particular," the BIA has defined "child abuse" broadly as "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a person under 18 years old or that impairs such a person's physical or mental well-being, including sexual abuse or exploitation." *In re Velazquez-Herrera*, 24 I. & N. Dec. 503, 508-09, 517 (BIA 2008). The House conference report on the IIRIRA notes that the grounds for deportability were amended

> to provide that an alien convicted of crimes of domestic violence, stalking, or child abuse is deportable. The crimes of rape and sexual abuse of a minor are elsewhere classified as aggravated felonies . . . , thus making aliens convicted of those crimes deportable and ineligible for most forms of immigration benefits or relief from deportation.

H.R. Conf. Rep. No. 104-828, 104th Cong., 2d Sess. at 505-06 (Sept. 24, 1996); *see In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 994-95 (BIA 1999). "Congress'[s] intent, then, was to expand the definition of an aggravated felony and to provide a comprehensive statutory scheme to cover crimes against children." *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. at 994. It is doubtful, however, that the definition is broad enough to include the crime of failing to pay child support, which would expand significantly the grounds for removal.

The BIA denied the motion to reopen, determining that the question whether the petitioner actually committed a removable offense was not worthy of consideration because it did not view the issue as "an exceptional situation." App'x at 9. That conclusion is difficult to accept. The motion to reopen raised a basic question whether the petitioner had committed an offense that provides a legal basis for removal; removal of a lawful permanent resident absent a statutory basis plainly would amount to an exceptional circumstance.

### III.

Gor's case is a textbook example of the propriety – and the necessity – of judicial review of agency decisions. *See Bowen v. Massachusetts*, 487 U.S. 879, 908 n.46 (1988) ("Much recent academic writing emphasizes the importance of . . . Court review of agency action. The theoretical justification for judicial review of agency action is grounded in concerns about constraining the exercise of discretionary power by administrative agencies. That power is legitimized by the technical expertise of agencies. But judicial review promotes fidelity to statutory requirements, and, when congressional intent is ambiguous, it increases the likelihood that the regulatory process will be a responsible exercise of discretion.") (quoting *Delaware Div. of Health & Soc. Servs. v. Dept. of Health & Human Servs.*, 665 F. Supp. 1104, 1117-18 (D. Del. 1987))). Although circuit precedent bars that review, there is good reason here to reexamine our cases on the subject.

However, for the reasons stated, we **GRANT** the government's motion to dismiss the petition for review for want of jurisdiction.

———————————

**CONCURRENCE**

———————————

ALICE M. BATCHELDER, Chief Judge, concurring.  I concur with the lead opinion's conclusion that we do not have jurisdiction to review either the original decision of the Board of Immigration Appeals or their decision not to reopen proceedings *sua sponte*, and that Petitioner's appeal must be dismissed.  I write separately to contest the notion set forth in the lead opinion that "the Supreme Court's recent decision in *Kucana v. Holder*, 130 S.Ct. 827 (2010), casts considerable doubt on our circuit precedent that dictates" that we have no jurisdiction to review the BIA's denial of Tushar Gor's motion to reopen *sua sponte*.

The attempts of the lead opinion to make this case look like *Kucana* are creative but, ultimately, unconvincing.  This case is fundamentally different from *Kucana* for two vitally important and, in my opinion, obvious reasons.

First, unlike the relevant arguments in *Kucana* – and unlike the lead opinion's characterization of the government's arguments here – the government here does not base its jurisdictional arguments on the text of 8 U.S.C. § 1252(a)(2)(B)(ii), which the lead opinion concedes was the basis for the *Kucana* decision.  Lead Op. at 10.  Instead, the government argues only that "[t]his Court lacks jurisdiction to review the Board's refusal to *sua sponte* reopen because such determinations are committed to the Board's unfettered discretion."  While the government made a nod to the jurisdiction-stripping provision of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Lead Op. at 11, the government's analysis relies entirely on our relevant case law, *Barry v. Mukasey*, 524 F.3d 721, 723 (6th Cir. 2008) ("the decision whether to invoke *sua sponte* authority under 8 C.F.R. § 1003.2(a) is committed to the unfettered discretion of the BIA and is therefore not subject to judicial review.") (internal quotation marks and brackets omitted), and *Harchenko v. INS*, 379 F.3d 405, 410-11 (6th Cir. 2004) ("The decision whether to invoke *sua sponte* authority is committed to the unfettered discretion of the BIA.  Therefore, the very nature of the claim renders it not subject to judicial

review.") (internal citation and quotation marks omitted).  In fact, nowhere in the government's brief is § 1252 even mentioned.

Briefing in this case was completed prior to the Supreme Court's decision in *Kucana*, and we had previously held that § 1252(a)(2)(B)(ii) proscribed judicial review of BIA denials of motions to reopen.  *Ghazali v. Holder*, 585 F.3d 289, 291 (6th Cir. 2009) ("The Immigration and Nationality Act strips federal courts of jurisdiction to review decisions specified under 8 U.S.C. §§ 1151-1381 to be in the discretion of the Attorney General.") (internal quotation marks and brackets omitted).  The government could have attempted to argue that § 1252 and *Ghazali* precluded review, but did not.  It is therefore troubling that the lead opinion chooses to mischaracterize the government's arguments.  Doing so allows the lead opinion to create the illusion that this case is analogous to *Kucana*.

The second reason why this case differs from *Kucana* is the fact that there is a world of difference between the immigrant's *statutory* right to file a motion to reopen, which was at issue in *Kucana*, and the discretionary right of the BIA – a right neither granted by nor addressed by Congress – to reopen *sua sponte*.  The *Kucana* Court recognized this difference when it expressly declined to express any opinion "on whether federal courts may review the Board's decision not to reopen removal proceedings *sua sponte*."  *Kucana*, 130 S.Ct. at 839 n.18.  The lead opinion goes to great lengths to show why the Supreme Court's express refusal to opine on the issue decided by our prior holdings in *Barry* and *Harchenko* should be viewed as an indication that the time has come to abandon those holdings.  In doing so, the lead opinion ignores the huge gulf that separates a statutory *right* to move to reopen and a purely discretionary non-statutory *power* to reopen *sua sponte*.

The *Kucana* Court held that the text of § 1252 barred judicial review "only when Congress itself set out the Attorney General's discretionary authority in the statute."  *Id.* at 837 n.13.  Any attempts to proscribe judicial review by regulation only, including 8 C.F.R. § 1003.2(a), were invalid.  "Had Congress elected to insulate denials of motions to reopen from judicial review, it could have so specified."  *Kucana*, 130 S.Ct. at 838.

The lead opinion here clearly interprets this language to mean that all BIA decisions must be subject to judicial review, except where Congress has expressly removed jurisdiction. When the power to reopen *sua sponte* is viewed in context, however, this conclusion is completely unsupportable.

The *Kucana* Court was faced with: (1) an express statutory right to file a motion to reopen proceedings; and (2) agency action that attempted to declare BIA responses to an immigrant's exercise of that right off-limits to judicial review. The Court described the motion to reopen as "an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Id.* at 834 (quoting *Dada v. Mukasey*, 128 S.Ct. 2307, 2317-19 (2008)). This safeguard had been put in place by Congress, *id.* at 838, and only an express removal of jurisdiction would suffice. Any ambiguity was to be resolved in favor of judicial review because the cannons of *statutory* construction establish a presumption of judicial review of administrative action. *Id.* at 839. None of the *Kucana* Court's analysis applies, however, to the case before us.

The power of the BIA to reopen *sua sponte* arises only from its own regulations. Congress has taken no steps to establish an individual right applicable to Gor, and without Congressional action to establish a right, the firm requirement that only Congress may remove jurisdiction simply does not exist. No one has argued that the BIA was required to give itself the power to reopen proceedings *sua sponte* in the event it should decide that extraordinary circumstances warrant it, but the lead opinion concludes that once an agency determines that it will, on occasion, bend the rules in helpful ways, every person who might benefit from a bending of the rules has the right to challenge the agency's decision not to do so.[1]

*Harchenko* and *Barry* remain good law because they were premised on the well-established principle that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of

---

[1]From a policy perspective, the lead opinion seems perfectly designed to assure that agencies will never again be willing to bend the rules in order to help those they are empowered to help.

discretion." *Harchenko*, 379 F.3d at 411 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). As we stated in *Harchenko*:

> As other courts have noted, the discretion permitted by [8 C.F.R. § 1003.2(a)] is 'so wide that even if the party moving has made out a prima facie case for relief, the BIA can deny a motion to reopen a deportation order. No language in the provision requires the BIA to reopen a deportation proceeding under any set of particular circumstances. Instead, the provision merely provides the BIA the discretion to reopen immigration proceedings as it sees fit.

*Id.* (citation omitted). The *Harchenko* and *Barry* panels concluded, as has nearly every other Circuit to consider the question, that the BIA's exercise of its *sua sponte* authority was not reviewable because there was simply "no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971). As expressed in greater detail by the Eighth Circuit:

> The statute governing motions to reopen speaks only to motions filed by a party; it does not establish any standard to guide the agency's discretion whether to reopen on its own motion. The regulation establishing the BIA's authority to reopen *sua sponte* was promulgated pursuant to a general grant of regulatory authority that sets no standards for this decision. The regulation itself, 8 C.F.R. § 1003.2(a), provides no guidance as to the BIA's appropriate course of action, sets forth no factors for the BIA to consider in deciding whether to reopen *sua sponte*, places no constraints on the BIA's discretion, and specifies no standards for a court to use to cabin the BIA's discretion.

*Tamenut v. Mukasey*, 521 F.3d 1000, 1004 (8th Cir. 2008) (internal citations omitted). Without a meaningful standard to apply, review of the BIA's exercise of its discretion would become nothing more than a vehicle for obtaining judge-preferred results.

Because I believe this case differs fundamentally from *Kucana*, I believe that our prior holdings in *Barry* and *Harchenko* remain good law, and I cannot join the lead opinion in urging their abandonment.

_____

**CONCURRING IN PART AND CONCURRING IN THE JUDGMENT**

_____

COLE, Circuit Judge, concurring in part and concurring in the judgment. I agree that we lack jurisdiction to review the original decision of the Board of Immigration Appeals ("BIA") and that this court's precedent blocks review of the BIA's decision not to reopen *sua sponte* Gor's immigration proceedings. I write separately to explain why I believe *Kucana v. Holder*, 130 S. Ct. 827 (2010), indicates that this precedent is in error.

The Government conflates two potential jurisdictional obstacles to appellate review: the jurisdictional bar enacted by § 1252(a)(2)(B)(ii) and the purported absence of meaningful standards against which to evaluate BIA decisions not to reopen proceedings *sua sponte*. In its brief, the Government argues that the statutory bar encompasses BIA decisions not to reopen immigration proceedings *sua sponte*, citing in support our decisions in *Barry v. Mukasey*, 524 F.3d 721 (6th Cir. 2008), and *Harchenko v. I.N.S.*, 379 F.3d 405 (6th Cir. 2004). These decisions do not rely on § 1252(a)(2)(B)(ii), but rather hold that we lack jurisdiction because the regulation authorizing *sua sponte* reopening, 8 C.F.R. § 1003.2, "provides no standard against which to judge the agency's exercise of discretion." *See Harchenko*, 379 F.3d at 410-11. This holding, which rests on principles of administrative law, is distinct from the jurisdictional bar in § 1252(a)(2)(B)(ii).[1]

_____

[1] Chief Judge Batchelder's concurring opinion dismisses the view that the Government relies on both § 1252(a)(2)(B)(ii) and our precedent as a troubling and deliberate mischaracterization of the Government's argument. The opinion argues that the Government does not rely on § 1252(a)(2)(B)(ii) nor mention *Ghazali v. Holder*, 585 F.3d 289 (6th Cir. 2009), which it interprets as holding that § 1252(a)(2)(B)(ii) proscribes judicial review of BIA denials of timely motions to reopen. In fact, the first sentence of the Government's substantive analysis explicitly addresses § 1252(a)(2)(B)(ii), (*see* Resp't Br. 12), and the remainder of the Government's argument follows from this starting point. Moreover, it comes as no surprise that the Government does not mention *Ghazali*, as the decision does not concern a motion to reopen, but a motion to reconsider, and does not hold that we lack jurisdiction over either. *See* 585 F.3d at 291. Thus, while little rests on the point—both the lead opinion and this opinion acknowledge that *Kucana* explicitly addresses only § 1252(a)(2)(B)(ii)—to say that the Government relies on both § 1252(a)(2)(B)(ii) and our precedent seems an entirely accurate characterization.

While the Supreme Court in *Kucana* expressly addressed only whether § 1252(a)(2)(B)(ii) bars appellate review of BIA decisions to deny timely motions to reopen and disclaimed expressing any opinion on whether the courts may review BIA decisions not to reopen removal proceedings *sua sponte*, *see Kucana*, 130 S. Ct. at 839 n.18, the Court's rationale nonetheless suggests that neither § 1252(a)(2)(B)(ii) nor any dearth of meaningful standards of review precludes our consideration of such decisions. *Kucana* held that § 1252(a)(2)(B) bars review only of decisions made discretionary by the Immigration and Nationality Act ("INA") itself, and not of decisions made discretionary by regulations promulgated pursuant to the INA.[2]  As we and our sister courts have recognized, the BIA's authority to reopen proceedings *sua sponte* is made discretionary by regulation.  *See Harchenko*, 379 F.3d at 410-11; *see also Mosere v. Mukasey*, 552 F.3d 397, 400-01 (4th Cir. 2009) (collecting cases from other circuits). Thus, under *Kucana*, § 1252(a)(2)(B)(ii) does not bar judicial review of such decisions. *See* 130 S. Ct. at 831.  Finding otherwise would ignore the strong presumption in favor of judicial review and raise significant separation of powers concerns. *Cf. id.* at 839-40.[3]

Moreover, the outcome of *Kucana* casts implicit but considerable doubt on the continued validity of *Barry* and *Harchenko*.  As the lead opinion recognizes, the regulation at issue in *Kucana*, 8 C.F.R. § 1003.2, is the same one that we and other circuits have held defines the BIA's discretion over *sua sponte* reopening so broadly as to preclude review.  Yet *Kucana* held—the BIA's equally unfettered discretion to deny motions to reopen notwithstanding—that the appellate courts retain jurisdiction to

---

[2]The Court noted that "any lingering doubt" regarding this reading of § 1252(a)(2)(B)(ii) was dispelled by "the presumption favoring judicial review of administrative action" absent "clear and convincing evidence" to the contrary. *Kucana*, 130 S. Ct. at 839 (internal quotation marks omitted). While *Kucana* does not hold that Congress may never delegate legislative authority to curtail judicial review to an executive agency, any such delegation would raise significant separation of powers concerns. *Compare United States v. Dryden*, 563 F.3d 1168, 1170-71 (10th Cir. 2009) *and Owens v. Republic of Sudan*, 531 F.3d 884, 888-93 (D.C. Cir. 2008) *with Miller v. F.C.C.*, 66 F.3d 1140, 1144 (11th Cir. 1995) *and United States v. Mitchell*, 18 F.3d 1355, 1360 n.7 (7th Cir. 1994).

[3]While two Courts of Appeals have noted that 8 C.F.R. § 1003.2(a) is promulgated pursuant to 8 U.S.C. § 1103, s*ee Lenis v. U.S. Attorney Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008); *Tamenut v. Mukasey*, 521 F.3d 1000, 1004 (8th Cir. 2008), *Kucana* indicates that this general grant of regulatory authority does not block judicial review.  The BIA's authority over timely motions to reopen, which courts retain jurisdiction to review under *Kucana*, derives from the same statute.  In fact, § 1103 is in a different subchapter of the INA to that specified by § 1252(a)(2)(B)(ii).  *See Kucana*, 130 S. Ct. at 840-41 (Alito, J., concurring).

review such decisions, without any suggestion that their review might be impeded by a dearth of meaningful standards to apply.[4]   Indeed, we and our sister courts routinely review BIA decisions denying motions to reopen without encountering any obstacle created by a lack of meaningful standards of review.  We have held that the BIA abuses its discretion to deny motions to reopen when it acts arbitrarily, irrationally or contrary to law.  *Lindor v. Holder*, 317 F. App'x 492, 497 (6th Cir. 2009) (citing *Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003)).  To ensure that the BIA has exercised its discretion appropriately, we require that it give more than cursory, summary, or conclusory statements in support of its decision.  *Id.* at 498 (citing *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004)).  The BIA must provide a rational basis for its decision, including an explanation of any departure from established policies, and the decision may not rest on an impermissible basis, such as invidious discrimination against a particular race or group.  *Id.* (citing *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)).  Similar standards might be readily and meaningfully applied in reviewing refusals to reopen proceedings *sua sponte*.  *Cf. Tamenut*, 521 F.2d at 1006-07 (Beam, J., dissenting) (making similar argument).

This is not to say that the standard and scope of review we apply should be the same as when reviewing the BIA's denial of a timely motion to reopen.  Under 8 U.S.C. § 1229a(c)(7)(C)(i), petitioners generally have ninety days from the entry of a removal order to move for reopening; after this deadline has expired, the only avenue of relief is for the BIA to reopen proceedings *sua sponte*.  Applying the same level of scrutiny when the ninety days has elapsed as when a timely motion has been filed would tend to undercut the statutory deadline.  Our review must reflect that the BIA has broad discretion in this area and appropriately may set a higher bar to reopen proceedings *sua sponte* than following a timely motion.  *Cf. Kucana*, 130 S. Ct. at 838 (noting that  BIA decisions must be accorded "due respect").  Even so, the BIA cannot exercise its

---

[4]The Ninth Circuit has pointed to the limitations on motions to reopen in 8 U.S.C. § 1229a(c)(7) as further constraining the BIA's discretion.  *See Ekimian v. I.N.S.*, 303 F.3d 1153, 1157 (9th Cir. 2002).  *Kucana* made clear, however, that "[s]ection 1229a(c)(7) . . . is not directed to the agency's discretion to grant or deny motions to reopen.  In the main, it simply lays out the requirements *an alien* must fulfill when filing a motion to reopen." 130 S. Ct. at 833 n.6 (internal quotation marks omitted).  The same is true of the regulatory provisions implementing § 1229a(c)(7) in 8 C.F.R. § 1003.2(c)(2)-(3).

authority arbitrarily, irrationally, or in a manner that is contrary to law or the Constitution.[5]

In this case, the BIA's decision declining to reopen proceedings did not address the extraordinary circumstances of Tushar Gor's hearing, instead stating only that the claims Gor raises could have been presented on appeal. Thus, on the strength of a single sentence, Gor is now to be deported from the United States—the country in which he has lived since the age of four—to India—a country that he has visited three times for a total period of less than three months—despite the IJ's apparent violation of his due process rights and the colorable legal arguments that his deportation is contrary to law. Yet we are barred from even considering whether the BIA's cursory dismissal of Gor's claims was adequate in light of these circumstances and the reasonable possibility that Gor's ability to retain counsel and present his arguments on appeal also was impeded by the IJ's failure to provide a list of free legal-service providers. Given *Kucana*'s implicit recognition that meaningful standards of review exist against which to evaluate BIA decisions made pursuant to 8 C.F.R. § 1003.2, I can see no good reason why we should not be able to assess whether the BIA appropriately exercised its authority here. *Cf. Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (noting that bar to judicial review of agency action where there are no standards to apply is "a very narrow exception" applicable only in "rare instances").

Our sister courts have recognized that, following the Attorney General's 2002 streamlining reforms—which cut the number of BIA members from twenty-three to eleven and allowed single-member review of most appeals—board members must review an enormous number of deportation cases, resulting in errors of disturbing

---

[5]Indeed, several of our sister courts have suggested—even while employing language as sweeping as that in *Barry* and *Harchenko*—that they retain jurisdiction to review constitutional challenges to BIA refusals to reopen proceedings *sua sponte*. *See Tamenut*, 521 F.3d at 1005 ("Although this court lacks jurisdiction over Tamenut's challenge to the BIA's decision not to reopen *sua sponte*, we generally do have jurisdiction over any colorable constitutional claim."); *see also Nawaz v. Holder*, 314 F. App'x 736, 736 (5th Cir. 2009) ("While we do not have jurisdiction to consider Nawaz's non-constitutional challenges to the BIA's refusal to reopen his removal proceedings *sua sponte*, we retain jurisdiction to consider constitutional challenges that were raised before the BIA."); *Lenis*, 525 F.3d at 1294 (noting that "an appellate court may have jurisdiction over constitutional claims related to the BIA's decision not to exercise its *sua sponte* power").

magnitude and frequency. *See, e.g.*, *Kadia v. Gonzales*, 501 F.3d 817, 820-21 (7th Cir. 2007) (noting that one board member admitted to reviewing more than fifty cases in one day and arguing that "[r]epeated egregious failures of the Immigration Court and the Board to exercise care commensurate with the stakes in an asylum case can be understood, but not excused, as consequences of a crushing workload that the executive and legislative branches of the federal government have refused to alleviate"); *Benslimane v. Gonzales*, 430 F.3d 828, 829 (7th Cir. 2005) (collecting cases from the Second, Third, Seventh and Ninth Circuits where BIA adjudication "has fallen below the minimum standards of legal justice"); *Berishaj v. Ashcroft*, 378 F.3d 314, 331 (3d Cir. 2004) (reversing a decision that "was an embarrassment to the Agency on multiple levels" and noting that while the 2002 reforms may "save an overburdened BIA from unnecessary and redundant tasks," they are not "a license for the BIA to say 'not our problem'"). Particularly in light of the present state of affairs at the BIA, we should not so easily and unnecessarily relinquish our critical role in ensuring that the agency properly exercises its awesome authority over deportation.