NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0119n.06

No. 21-3757

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

REINA PEREZ-AGUILAR,

    Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 16, 2022
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

Before: WHITE, THAPAR, and LARSEN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge**. Reina Perez-Aguilar, a native citizen of Guatemala, seeks review of a Board of Immigration Appeals order denying her application for asylum, withholding of removal, and protection under the Convention Against Torture. However, because Perez-Aguilar did not file her petition for review within the statutorily mandated 30-day period, we must dismiss it.

**I.**

Perez-Aguilar entered the United States without immigration documentation in January 2016. She sought asylum, withholding of removal, and protection under the Convention Against Torture (CAT). At Perez-Aguilar's removal hearing in March 2019, the Immigration Judge (IJ) adopted Perez-Aguilar's testimony "as the Court's factual findings." AR 37.

**A.**

Perez-Aguilar, a single mother, fled her hometown of Tierra Blanca, Guatemala, where she and her two-year-old daughter lived with her parents, because she feared a man named Abner Mendez, who was a member and local leader of the 18 gang.

Perez-Aguilar first met Mendez in August 2014. As Perez-Aguilar was heading home from her job at a store within walking distance of her home, Mendez approached her and told her to give him her money, or else he would kill her. Perez-Aguilar told him that she did not have any money, and Mendez left.

In December 2014, Mendez again approached Perez-Aguilar and asked her for money. This time, when she told him she did not have any money, he pushed her. Mendez approached her again in January 2015 and told her that if she "didn't give him any money he was going to kill" her, and told her that she was "supposed . . . to be working for him." *Id.* at 127. Perez-Aguilar did not see Mendez again until October 2015, when, on the way home from work, she encountered his girlfriend Alba, who demanded money. When Perez-Aguilar told Alba that she did not want to give away her money, Alba threw her on the ground and began to beat her. Alba then pulled out a knife and attempted to stab Perez-Aguilar but dropped the knife on the ground during the ensuing struggle. Alba started biting Perez-Aguilar's fingers and called for help. Mendez responded and started beating Perez-Aguilar in the head. Perez-Aguilar lost consciousness, and when she awoke her mouth and nose were swollen. She had been beaten in the mouth, nose, stomach, and legs and Mendez had taken her money.

Perez-Aguilar went back to her parents' house, where her father—who knew "something about medicine"—treated her. *Id.* at 135. She did not go to the hospital. It took Perez-Aguilar about eight to ten days to recover from her injuries, and in that time Mendez called her around five

2

times per day. Perez-Aguilar refused to answer her phone, and Mendez sent her text messages telling her to "go out and work because he needed the money." *Id.* at 137. Even after Perez-Aguilar changed her number, Mendez was still able to contact her by phone. Perez-Aguilar did not report any of this to the Guatemalan police. The nearest police station was approximately six hours away, and Perez-Aguilar did not expect the local authority—the "auxiliaries"—to offer security, because even though "[m]any people go to them . . . [a]ll they do is . . . make sure the highway is fine." It would have taken money to get the police to come out to Perez-Aguilar's village, so she did not call them. Perez-Aguilar did not consider relocating to a part of Guatemala where the police were stationed closer than six hours away.

After Perez-Aguilar recovered from her injuries, she travelled to Mexico, where she stayed for two months, and then left for the United States. While Perez-Aguilar was in Mexico, Mendez sent her a message telling her to return to Tierra Blanca and join the 18 gang. As of the date of the removal hearing, Mendez had asked Perez-Aguilar's family about her at least three times since she had relocated to the United States, specifically asking if she "send[s] money" to her family in Guatemala and demanding her location and phone number. At the time of the hearing, Perez-Aguilar believed that Mendez was in the United States and looking for her because her cousins and mother told her so.

Perez-Aguilar further testified that she has no family outside of her home village in Guatemala; Mendez was "always there with a weapon threatening people" and "always . . . taking money from people"; and if she were to return to Guatemala, Mendez's friends would tell him where she was. To Perez-Aguilar's knowledge, Mendez has attacked three people, in addition to her, for money.

**B.**

Perez-Aguilar petitioned for asylum, withholding of removal, and protection under the CAT, arguing that she fell into two particular social groups that were entitled to protection: "[y]oung[,] working[,] single-parent Guatemalan mothers who are victims of gang harassment and physical violence," and "[y]oung[,] working[,] single-parent Guatemalan women who refuse to be extorted by gang members and are subsequently victims of harassment and physical violence." *Id.* at 37–38. The IJ denied Perez-Aguilar's petition. Although the IJ concluded that Perez-Aguilar had experienced persecution and that her fear of future persecution was both objectively and subjectively reasonable, he concluded that her asylum petition failed because her asserted social groups are not cognizable under asylum law, and even if they were, Perez-Aguilar failed to prove that she was targeted *because of* her membership in the asserted social groups, i.e., that there was a "nexus" between the harm done to her and her protected group. The IJ also found that she failed to prove that the Guatemalan government was unable or unwilling to help her or that she could not relocate to another part of Guatemala. *Id.* at 37–39. The IJ also concluded that, as to the claim for protection under the CAT, "there [was] no evidence at all that it is more likely than not that this respondent would be tortured by government actors in Guatemala <u>or</u> that the Government would acquiesce in her torture or be willfully blind to the actions of" Mendez. *Id.* at 39.

Perez-Aguilar appealed to the BIA, which affirmed the IJ's order of removal. She then brought this petition for review.

**II.**

The BIA affirmed the IJ's final removal order on March 29, 2021. The Immigration and Nationality Act requires that a petition for review to the court of appeals be filed "not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). Perez-Aguilar's deadline

for appealing the BIA's determination was therefore April 28, 2021, *id.*, but, as the government raises in its briefing, Perez-Aguilar did not file her petition until May 21, 2021. The petition is therefore untimely.

In the past, we have referred to the thirty-day deadline to seek review of a BIA determination as "both mandatory and jurisdictional." *Prekaj v. I.N.S.*, 384 F.3d 265, 267–68 (6th Cir. 2004) (quoting *Martinez-Serrano v. INS*, 94 F.3d 1256, 1258 (9th Cir. 1996)). More recently, however, the Supreme Court issued an opinion clarifying "the distinction . . . between jurisdictional appeal filing deadlines and mandatory claim-processing rules." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 21 (2017). As of this date, no court of appeals has opined definitively on whether § 1252(b)(1) is a jurisdictional or mandatory claim-processing rule, but our court and the Seventh Circuit have noted, in unpublished cases, that the rule is "[a]t the very least . . . a mandatory claims-processing rule" that must be enforced when invoked. *Hakeem v. Barr*, 2020 U.S. App. LEXIS 25860, at *2 (6th Cir. Aug. 13, 2020); *see also Pascual-Esteban v. Garland*, 2021 U.S. App. LEXIS 28977, at *2 (6th Cir. Sep. 23, 2021) (holding the same); *Rafael-Diego v. Garland*, 2021 U.S. App. LEXIS 18545, at *2 (6th Cir. June 21, 2021) (same); *Olatunji v. Sessions*, 723 F. App'x 373, 373 (7th Cir. 2018) (same). Because the government has properly invoked the rule here, we need not determine today whether § 1252(b)(1) is jurisdictional under *Hamer*.

Perez-Aguilar argues that due to "US Postal Service delay caused by COVID," she did not receive the BIA decision until April 24, 2021, and that her May 21, 2021 filing date was within "30 days after receiving the BIA decision." Petitioner's Br. at 7. Perez-Aguilar also argues that the 30-day rule is "ambiguous" and that the delay was "well taken" by the Fifth Circuit, with which she initially erroneously filed her petition and which subsequently transferred the case to our court.

*See id.*; Reply Br. at 4. Finally, Perez-Aguilar argues that we have discretion, under Federal Rules of Appellate Procedure 4 and 26, to extend her filing deadline to 60 days because "one of the parties is a United States agency."[1] Reply Br. at 5–6.

These arguments must fail. The § 1252(b)(1) deadline is clear and unambiguous, requiring that the petition be filed "not later than 30 days after the date of the final order of removal." Additionally, the Fifth Circuit had no reason to address the timeliness issue when it transferred Perez-Aguilar's case to our court. And the federal rules do not grant us discretion to adjust this statutory deadline because "[w]hen 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) (quoting *Hamer*, 138 S.Ct. at 17).

Finally, we are sympathetic to Perez-Aguilar's claims of delay due to the COVID-19 pandemic. However, when she received the BIA decision, she still had four days before the deadline expired. In addition to filing her petition before this panel within that time, she could have moved for reconsideration before the BIA within those same thirty days after the BIA's decision, or could have moved to reopen the removal proceedings within ninety days. 8 U.S.C. § 1229a(c)(6)–(7); *see Gor v. Holder*, 607 F.3d 180, 184 (6th Cir. 2010). She also could have requested that the BIA exercise its discretion to reissue the final decision with a new date, which

---

[1] The rules cited by Perez-Aguilar, by their terms, do not apply to petitions for review of BIA opinions. Federal Rule of Appellate Procedure 26(b) provides that, "[f]or good cause, the court may extend the time prescribed by these rules or by its order to perform any act, or may permit an act to be done after that time expires. But the court may not extend the time to file: (1) a notice of appeal (except as authorized in Rule 4) or a petition for permission to appeal." Federal Rule of Appellate Procedure 4(a)(1)(B) provides that "[t]he notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is: (i) the United States; [or] (ii) a United States agency." However, Federal Rule of Appellate Procedure 20 explains that Rule 4 does not "apply to the review or enforcement of an agency order." The other discretionary extensions in Rule 4 apply to district courts, not our court or agencies. Fed. R. App. P. 4(a)(5)–(6).

the BIA may do at any time as a "measure of grace." *Martinez-Espino v. Gonzales*, 205 F. App'x 421, 425 (6th Cir. 2006) (quoting *Firmansjah v. Ashcroft*, 347 F.3d 625, 627 (7th Cir. 2003)). In any event, we cannot allow this late petition, or extend the time for filing it.[2] *Prekaj*, 384 F.3d at 267–68.

Accordingly, we dismiss the petition for review.

---

[2] Neither the Supreme Court nor our court has resolved the question whether, in light of *Hamer*, "mandatory claim-processing rules may [ever] be subject to equitable exceptions." *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1849 n.5 (2019) (holding that Title VII's charge-filing rule—which requires filing a charge with the Equal Employment Opportunity Commission as a prerequisite to suit—is a mandatory claim-processing rule and not jurisdictional); *Alam*, 960 F.3d at 835 (declining to consider whether equitable exceptions may apply generally to claim-processing rules but noting that "the norm is to follow a mandatory rule unless [applicable] statutory exceptions apply"). Because Perez-Aguilar could have acted within the statutory filing window, we do not believe an equitable exception would be appropriate in this case and decline to take up the issue now.